EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Eduardo Cardona; Funeraria Cardona<br><br>Peticionario<br><br>v.<br><br>Junta de Apelaciones sobre Construcciones y Lotificaciones<br><br>Recurrida<br><br>María Jiménez Álvarez<br>Opositora Recurrida | Certiorari<br><br>2007 TSPR 33<br><br>170 DPR _____ |

Número del Caso: CC-2005-0432

Fecha: 28 de febrero de 2007

Tribunal de Apelaciones:

      Región Judicial de San Juan-Panel III

Juez Ponente:

      Hon. Antonio J. Negroni Cintrón

Abogada de la Parte Peticionaria:

      Lcda. Leonor Porrata – Doria

Abogado de la Parte Recurrida:

      Lcdo. Edgardo Veguilla González

Abogados de la Parte Opositora-Recurrida:

      Lcdo. Daniel Martínez Oquendo
      Lcda. Maretsa Rodríguez Portela
      Lcda. María Elisa Martínez Avilés

Materia: Revisión de Decisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eduardo Cardona; Funeraria Cardona

     Peticionario

        v.

Junta de Apelaciones sobre          CC-2005-432
Construcciones y Lotificaciones

     Recurrida

María Jiménez Álvarez
     Opositora Recurrida

SENTENCIA

San Juan, Puerto Rico, a 28 de febrero de 2007

El peticionario acudió ante nosotros de una determinación tomada por el Tribunal de Apelaciones en la cual concluyó que, tanto la Administración de Reglamentos y Permisos al igual que la Junta de Apelaciones sobre Construcciones y Notificaciones habían errado al autorizar la operación de la Funeraria Cardona y su sala de embalsamar, mediante el mecanismo de variación. El tribunal apelativo intermedio revocó a las agencias administrativas al concluir que éstas no formularon determinaciones de hechos ni conclusiones de derecho que justificaran la variación de uso que concedieron por lo que procedía dejarla sin efecto y devolver el caso al foro administrativo.

El 5 de octubre de 2005, expedimos el auto solicitado. Ambas partes han comparecido a expresar sus respectivas posiciones sobre la controversia ante nuestra atención. Atendidos los planteamientos de las partes y evaluado en su totalidad el expediente que consta en autos, por estar igualmente dividido el Tribunal se confirma la determinación del Tribunal de Apelaciones.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. El Juez Presidente señor Hernández Denton está inhibido. Los Jueces Asociados señor Rebollo López y señor Fuster Berlingeri disienten sin opinión escrita. El Juez Asociado señor Rivera Pérez no intervino. La Juez Asociada señora Rodríguez Rodríguez emitió una Opinión de Conformidad.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Eduardo Cardona; Funeraria Cardona
     Peticionario

       v.

Junta de Apelaciones sobre
Construcciones y Lotificaciones       CC-2005-432

     Recurrida


María Jiménez Álvarez

     Opositora Recurrida


Opinión de conformidad emitida por la Juez Asociada señora Rodríguez Rodríguez a la cual se une la Jueza Asociada señora Fiol Matta.


San Juan, Puerto Rico, a 28 de febrero de 2007

Corresponde determinar si la Administración de Reglamentos y Permisos (A.R.P.E.) autorizó correctamente la operación de una sala de embalsamar, mediante el mecanismo de variación establecido por el Reglamento de Zonificación Especial de Santurce.

**I**

El señor Eduardo Cardona (el "Sr. Cardona") es propietario de la Funeraria Cardona ("la funeraria"), sita en la Avenida Eduardo Conde Núm. 2199 de Villa Palmeras, Santurce, desde 1974. La funeraria está localizada dentro de los límites de un distrito zonificado como Zona de Uso General Dos ("ZU-G2").

Anteriormente, el predio de terreno estaba clasificado como Comercial Uno (C-1), hasta su rezonificación como ZU-G2 por virtud de las enmiendas al Reglamento de Zonificación Especial de Santurce, 23 R.P.R. sec. 650.1861 *et seq.*, que entraron en vigor el 14 de enero de 1993.[1] La estructura donde ubica la funeraria es de una planta y tiene un sótano de hormigón.

La señora María Jiménez Álvarez (la "Sra. Jiménez") reside desde 1987 en una residencia que colinda con la funeraria propiedad del Sr. Cardona. Cuando la Sra. Jiménez compró la propiedad donde vive, la funeraria ya estaba en operación. Para esa fecha, el negocio de servicios fúnebres operaba una sala de embalsamar cadáveres en la primera planta de la estructura, mientras que en el sótano, donde posteriormente se reubicó esta sala, operaba un taller de ebanistería y pintura.[2] La residencia de la Sra. Jiménez ubica en una zona de clasificación residencial pero uno de los patios laterales de la propiedad colinda con el predio de terreno donde está localizada la funeraria.

El Sr. Cardona poseía un permiso para operar la funeraria concedido previo al 1993, cuando se rezonificó el

---

[1] El Reglamento fue revisado el 17 de mayo de 2003. Las secciones pertinentes a la controversia no sufrieron enmiendas.
[2] Resolución de 10 de diciembre de 2002 de la Junta de Apelaciones sobre Construcciones y Notificaciones, Apéndice 4 del recurso de *Certiorari*, págs. 57-63.

área.[3]  Poseía también el endoso del Departamento de Salud y la correspondiente licencia sanitaria.  El 25 de septiembre de 1996 la Sra. Jiménez presentó una querella ante la Administración de Reglamentos y Permisos ("A.R.P.E.") contra el Sr. Cardona, alegando que los ruidos y gases que emanaban de un cuarto de la funeraria y del estacionamiento de ambulancias fúnebres le ocasionaban problemas de salud.[4] En atención a lo anterior, A.R.P.E., mediante carta fechada del 26 de marzo de 1997, refirió a la Sra. Jiménez a la Junta de Calidad Ambiental (la "J.C.A.") y le informó que el Sr. Cardona tenía el correspondiente permiso de uso para su funeraria.[5]  Le indicó además que en caso de que el Sr. Cardona incumpliera con cualquier requerimiento que hiciera la J.C.A. para corregir las anomalías, le sometiera a A.R.P.E. evidencia de lo anterior para que la agencia determinara si procedía la revocación del permiso de uso que tenía la funeraria.

---

[3] La funeraria había operado con permisos de uso provisionales de A.R.P.E. hasta el año 1991 cuando se le denegó la operación del uso.  En desacuerdo con lo anterior, el Sr. Cardona apeló esta determinación ante la Junta de Apelaciones sobre Construcciones y Lotificaciones la cual luego de celebrar la vista pública correspondiente, emitió Resolución el 14 de febrero de 1992 autorizando la operación permanente de la funeraria.  Posteriormente, el 28 de agosto de 1992 A.R.P.E. emitió el permiso de uso número 80-18-D-282-SPP autorizando la operación permanente de la funeraria, conforme lo determinado por la Junta de Apelaciones sobre Construcciones y Lotificaciones. *Véase* Apéndice 4 del recurso de *Certiorari*, pág. 66 y la Resolución de la Junta de Apelaciones sobre Construcciones y Lotificaciones, Apéndice 4 del recurso de *Certiorari*, pág. 58.  *Véase además* el Informe sobre Conferencia Preliminar entre Abogados, Apéndice 4 del recurso de *Certiorari*, pág. 113.
[4] Apéndice 4 del recurso de *Certiorari*, pág. 64.
[5] Apéndice 4 del recurso de *Certiorari*, pág. 65.

Del expediente no se desprende qué gestiones realizó la Sra. Jiménez conforme la comunicación anterior. No obstante, surge del expediente ante nuestra consideración que luego de la querella presentada por la Sra. Jiménez, A.R.P.E. le notificó en varias ocasiones al Sr. Cardona que estaba operando "[u]n negocio de embalsamamiento y de servicios fúnebres en una Zona ZU-G2" sin el permiso correspondiente de la agencia.[6]

En el año 1996 había entrado en vigor un nuevo Reglamento del Departamento de Salud que requirió que el embalsamamiento de cadáveres se realizara en un área separada de las capillas de la funeraria.[7] Ante lo anterior, el Sr. Cardona reubicó la sala de embalsamar en el sótano de la funeraria y procedió a solicitar un nuevo permiso de uso para la operación de la funeraria y la sala de embalsamar.[8] Mediante acuerdo fechado del 15 de enero de 1999, A.R.P.E. concedió el permiso solicitado.[9] Esta

---

[6] Apéndice 4 del recurso de *Certiorari*, pág. 67.
[7] Reglamento Sanitario Núm. 136 de 25 de diciembre de 1996, según enmendado.
[8] Solicitud Número B-98-18-F-417-SPU presentada ante A.R.P.E.
[9] El acuerdo de A.R.P.E. expresó que se

> AUTORIZA, para operar un(a) Funeraria Y Sala de Embalsamar . . . a tenor con las disposiciones del Capítulo 35 del Reglamento de Zonificación Especial de Santurce [sobre variaciones], considerando que el uso solicitado (Sala para Embalsamar) puede considerarse accesorio a la Funeraria **la cual cuenta con permiso de uso. . . .**

Resolución de A.R.P.E., Apéndice 4 del recurso de *Certiorari*, pág. 98. (énfasis suplido). Además, se expresó que "la autorización señalada, mediante el mecanismo de

determinación se realizó sin haberse realizado vistas públicas. Cabe señalar que en sus determinaciones de hechos, A.R.P.E. expresó que el Sr. Cardona había sometido "copia del permiso de uso con que opera[ba]" la funeraria y que la solicitud se realizó "con el objeto de incluir a la funeraria una sala para embalsamar e incluir el uso en la segunda planta."[10] Más aún, A.R.P.E. concluyó en síntesis, como parte de sus conclusiones de derecho, que el uso solicitado se podía considerar mediante el mecanismo de variaciones y se limitó a transcribir el Capítulo 35 del Reglamento de Zonificación Especial de Santurce vigente al momento de la solicitud sobre variaciones.

Insatisfecha, la Sra. Jiménez solicitó reconsideración de la determinación anterior. Luego de varios incidentes procesales, A.R.P.E. acogió la petición pero no emitió determinación final dentro del periodo establecido, por lo

---

VARIACION, es única y exclusivamente para el uso solicitado." *Id*.

[10] Específicamente A.R.P.E. consignó como Determinaciones de Hechos en la Resolución emitida autorizando el uso solicitado lo siguiente:

> El solar donde se propone el uso tiene una cabida de 532.55 metros cuadrados. La estructura a ser utilizada para el uso propuesto es de una planta y sótano en hormigón y bloques, que ocupa un área aproximada de 30' 0" x 50'0.

> Al momento de estudio la parte proponente somete la copia de la lisencia (sic) sanitaria de la funeraria y copia del permiso de uso con que opera la misma. Esta solicitud se hace con el objeto de incluir a la funeraria una sala para embalsamar e incluir el uso en la segunda planta.

Informe sobre Acuerdo adoptado por el Director del Centro de Servicios de San Juan, Apéndice 4 del recurso de *Certiorari*, pág. 96.

que la Sra. Jiménez recurrió ante la Junta de Apelaciones sobre Construcciones y Lotificaciones (la "Junta"), aduciendo que A.R.P.E. no formuló determinaciones de hechos que justificaran la concesión del permiso. Luego de una inspección ocular[11] y de celebrar una vista pública, el organismo apelativo confirmó la determinación de A.R.P.E. mediante la cual se concedió el permiso de uso que solicitó el Sr. Cardona. La Junta determinó, como parte de sus conclusiones de derecho, que la funeraria contaba con permiso de uso y que A.R.P.E. había autorizado "el permiso de uso al considerar la Sala de Embalsamar como un uso accesorio e incidental a la Funeraria."[12]

En desacuerdo, la Sra. Jiménez presentó un recurso de revisión ante el Tribunal de Apelaciones. Alegó en síntesis que la Junta, al igual que A.R.P.E., no formuló en su Resolución determinaciones de hechos que justifiquen su determinación de confirmar la autorización de A.R.P.E. a la operación de la funeraria y la sala de embalsamar mediante el mecanismo de variación. Adujo además que el organismo meramente se limitó a transcribir en sus conclusiones de derecho, las disposiciones del Reglamento de Zonificación Especial de Santurce que regulan las variaciones. Más aún, expresó que no procedía confirmar una concesión de un permiso de uso incumpliendo con las disposiciones de la Ley

---

[11] La inspección ocular de la estructura donde opera la funeraria y la sala de embalsamar se celebró el 8 de marzo de 2001. *Véase* minuta de la inspección ocular, Apéndice 4 del recurso de *Certiorari*, pág. 120.
[12] Resolución de J.A.C.L., Apéndice 4 del recurso de *Certiorari*, pág. 61.

de Política Pública Ambiental.  De otra parte, A.R.P.E. y J.A.C.L. alegaron que concedieron el permiso en controversia porque entendían que la operación de la sala de embalsamar se trataba de un "uso accesorio e incidental al ya existente," permitido desde 1992.[13]

El Tribunal de Apelaciones revocó a las agencias administrativas al concluir que éstas no formularon determinaciones de hechos ni conclusiones de derecho que justificaran la variación de uso que concedieron.  Concluyó que meramente se limitaron a "recitar" disposiciones del Reglamento de Zonificación Especial de Santurce sobre variaciones.  Específicamente, el Tribunal concluyó que

> somos concientes de que se trata de una funeraria que tiene permiso de uso para operar desde fecha anterior en que la Sra. Jiménez se querelló por vez primera.  El permiso para operar la funeraria no está en controversia.  Pero ese hecho, no justifica que se soslaye la aplicación de los criterios propios y reglamentarios para determinar si la nueva ubicación de la sala de embalsamamiento como la que interesa operar legalmente el Sr. Cardona puede realizarse en el mismo lugar que la funeraria, como excepción o variación, aunque se trate de un uso accesorio, en las circunstancias actuales de la comunidad. (Énfasis en el original)

Sentencia del Tribunal de Apelaciones de 28 de febrero de 2005, a la pág. 19.

El Sr. Cardona solicitó oportunamente reconsideración de la determinación del foro apelativo intermedio y dicho foro denegó la misma.  En desacuerdo, el Sr. Cardona acudió

---

[13] Moción en Cumplimiento de Resolución presentada por J.A.C.L., Apéndice 9 del recurso de *Certiorari*, pág. 155 y Alegato presentado por A.R.P.E. ante el Tribunal de Apelaciones, Apéndice 11 del recurso de *Certiorari*, pág. 172.

ante nosotros, mediante petición de *certiorari*, planteando que el foro apelativo intermedio cometió los siguientes errores:

> Erró en Derecho el Tribunal de Apelaciones al determinar que el uso accesorio de [la] Sala de Embalsamar constituye una variación de uso.

> Erró en Derecho el Tribunal de Apelaciones al no aplicar las disposiciones de la Sección 20.01 del Reglamento de Zonificación Especial de Santurce, que rige los usos accesorios.

> Erró en Derecho el Tribunal de Apelaciones al no apreciar que el uso de la Sala de Embalsamar no se considera como uso principal, sino la Funeraria, de acuerdo con lo establecido por el Reglamento de Zonificación Especial de Santurce.

Expedimos el recurso. Hoy el Tribunal, por estar igualmente dividido confirma la determinación del foro apelativo intermedio.

## II

La revisión judicial de decisiones administrativas tiene como fin primordial delimitar la discreción de los organismos administrativos para asegurar que éstos desempeñen sus funciones conforme la ley. *Mun. de San Juan v. J.C.A.*, 149 D.P.R. 263, 279 (1999). Estas determinaciones gozan de gran deferencia y respeto de parte de nuestros tribunales. *Mun. de San Juan v. J.P.*, 169 D.P.R. ___, 2006 T.S.P.R. 155; *Hernández v. Centro Unido de Detallistas*, 168 D.P.R. ___, 2006 T.S.P.R. 131. Lo anterior se fundamenta en la vasta experiencia y el conocimiento especializado que poseen los organismos administrativos sobre los asuntos que estatutariamente se les ha encomendado. *Id*. No obstante, "la deferencia

reconocida no equivale a la renuncia de la función revisora del Tribunal en instancias apropiadas y meritorias, como resulta ser cuando el organismo administrativo ha errado en la aplicación de la ley." *Rebollo Vda. de Liceaga v. Yiyi Motors*, 160 D.P.R. ___, 2004 T.S.P.R. 2; *véase además Reyes Salcedo v. Policía de P.R.*, 143 D.P.R. 85 (1987).

La función revisora de los tribunales en relación a las determinaciones de las agencias administrativas es una de carácter limitada, por lo que al ejercer nuestra función revisora es de suma importancia considerar las determinaciones de hechos y conclusiones de derecho consignadas en una decisión administrativa. *Mun. de San Juan v. J.P.*, supra; *Rebollo Vda. de Liceaga v. Yiyi Motors*, supra. Más aún, el criterio rector para nuestros tribunales a la hora de revisar determinaciones administrativas es la razonabilidad de la actuación de la agencia recurrida. *Mun. de San Juan v. J.P.*, supra; *Hernández v. Centro Unido de Detallistas*, supra; *Otero v. Toyota*, 163 D.P.R. ___, 2005 T.S.P.R. 8. En esencia, la revisión judicial de las determinaciones de los organismos administrativos comprende básicamente tres (3) áreas: (1) la concesión del remedio apropiado; (2) la revisión de las determinaciones de hechos conforme el criterio de la evidencia sustancial a la luz del expediente administrativo; y (3) la revisión completa y absoluta de las conclusiones de derecho. *Mun. de San Juan v. J.C.A.*, supra, 279-280.

La sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A sec. 2175, estipula que "las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo." En cuanto a las conclusiones de derecho, el referido estatuto dispone que podrán ser revisadas "en todos sus aspectos por el tribunal." *Id*.

El requisito estatutario de consignar determinaciones de hechos y conclusiones de derecho en las decisiones de las agencias administrativas, persigue los siguientes propósitos: (1) propiciar a los tribunales la oportunidad de revisar adecuadamente la decisión administrativa y facilitar esta tarea; (2) fomentar que la agencia adopte una decisión cuidadosa y razonada dentro de los parámetros de su autoridad y discreción; (3) ayudar a la parte afectada a entender por qué el organismo administrativo decidió como lo hizo, y, estando mejor informada, poder decidir si acude al foro judicial o acata la determinación; (4) promover la uniformidad intraagencial, en particular cuando el proceso decisorio institucional es adoptado por distintos miembros de un comité especial a quienes les está encomendado celebrar vistas y recibir la prueba; y (5) evitar que los tribunales se apropien de funciones que corresponden propiamente a las agencias administrativas bajo el concepto de especialización y destreza. *Mun. de*

*San Juan v. J.P.*, supra; *Mun. de San Juan v. J.C.A.*, supra, 281-282.

**III**

**A**

La Junta de Planificación es la entidad administrativa responsable de regular el uso de terrenos dentro de la jurisdicción del Estado Libre Asociado de Puerto Rico, asegurando la adecuada utilización de nuestros recursos naturales. *Hernández v. Centro Unido de Detallistas*, *supra*. Entre sus funciones, la Junta tiene la responsabilidad de adoptar y aprobar reglamentos de zonificación con el propósito de dirigir y controlar el uso y desarrollo de nuestras tierras. *Id*. Según hemos señalado en el pasado, "la zonificación es el proceso mediante el cual 'se clasifican los terrenos en zonas, o distritos y se establecen para cada uno disposiciones específicas sobre el uso de los terrenos y sobre las obras y estructuras a permitirse." *Id*. En esencia, a través de la zonificación se regulan las normas básicas acerca de donde y de qué forma pueden suceder las actividades sociales y económicas de nuestros ciudadanos, armonizando las necesidades e intereses de éstos con la protección y adecuada utilización de nuestros recursos. *Id*. Conforme lo anterior, la Junta de Planificación aprobó el Reglamento de Zonificación Especial de Santurce, para dirigir y

ordenar el uso y desarrollo de los terrenos del área.[14]   23 R.P.R. sec. 650.1871.

De otra parte, A.R.P.E., por mandato estatutario, tiene el deber de ejecutar las funciones operacionales que desempeñaba la Junta de Planificación respecto la aplicación de los reglamentos de planificación adoptados por la Junta en los casos individuales y la concesión de permisos de construcción. *Mun. de San Juan v. J.P.*, supra; *Asoc. Vec. Urb. Huyke v. Bco. Santander*, 157 D.P.R. 521 (2002). Específicamente, esta agencia administrativa tiene la facultad de asegurar que se cumplan los reglamentos de planificación y construcción adoptados por los diferentes organismos gubernamentales pertinentes. *Id*.

Por virtud de la entrada en vigor de las enmiendas al Reglamento de Zonificación Especial de Santurce, se modificó la clasificación del predio de terreno donde ubicaba desde 1974 la funeraria en controversia, de uso Comercial Uno (C-1) a Zona de Uso General Dos (ZU-G2). De acuerdo a la Tabla de Usos Permitidos del Reglamento, los

---

[14] La sección 1.7 del Reglamento establece lo siguiente:

> Las disposiciones de este Reglamento prevalecerán sobre y quedarán complementadas por las disposiciones de cualquier otro reglamento en vigor adoptado por la Junta de Planificación que sea de aplicación para la zona específica que ubique la propiedad, hasta donde éstas no fueran incompatibles con la materia específicamente cubierta por este Reglamento. Sus disposiciones se complementarán e interpretarán a la luz de los objetivos de este Reglamento, de las políticas públicas y de los planes sobre usos de terrenos adoptados por la Junta.

23 R.P.R. sec. 650.1875

servicios fúnebres, como los que aquí están en controversia, no están permitidos en un distrito con ésta clasificación. *Véase* sección 6.7 del Reglamento de Zonificación Especial de Santurce, 23 R.P.R. sec. 650.1885.

**B**

Conforme la facultad delegada estatutariamente para implantar la política pública que le ha sido encomendada, A.R.P.E. puede conceder permisos discrecionales mediante la concesión de excepciones o variaciones a los requisitos de zonificación establecidos por los reglamentos que administra. *Asoc. Vec. Urb. Huyke v. Bco. Santander*, *supra*. Las variaciones son una válvula de escape dentro del rígido ordenamiento de zonificación vigente en Puerto Rico. *Asoc. Res. Park Side, Inc. v. J.P.*, 139 D.P.R. 349 (1995). Esta figura atenúa el rigor reglamentario permitiendo cambios a las restricciones que sujetan el uso de la propiedad cuando se demuestra que, dado a circunstancias especiales, la aplicación de la reglamentación puede resultar irrazonable y ocasionar perjuicios al propietario. *Id*; *A.R.P.E. v. J.A.C.L.*, 124 D.P.R. 858 (1989). Lo anterior impide que una reglamentación existente se convierta en un instrumento inflexible que le impida amoldarse a situaciones extraordinarias. *T-JAC, Inc. v. Caguas Centrum Limited Partneship*, S.E., 148 D.P.R. 70 (1999).

El Reglamento de Zonificación Especial de Santurce, supra, similar al Reglamento de Planificación Núm. 4, 23

R.P.R. sec. 650.1745 *et seq.*, proscribe la forma en que podrán concederse variaciones. Así, la sección 2.2 del Reglamento de Zonificación Especial define y regula el mecanismo de variaciones. Específicamente, esta disposición establece que una variación es una

> [a]utorización para utilizar una propiedad **para un uso no permitido** por las restricciones impuestas a una zona o distrito y que sólo se concede para evitar perjuicios a una propiedad que, debido a circunstancias extraordinarias, la aplicación estricta de la reglamentación equivaldría a una confiscación de la propiedad. Autorización dada a la construcción de una estructura o parte de ésta que no satisface las normas de edificabilidad establecidas, pero que debido a la condición de solar, la ubicación especial o el uso particular, amerita una consideración especial. Variación es sinónimo de concesión.

23 R.P.R. sec. 650.1881 (B)(229). (Énfasis suplido)

En el pasado hemos expresado, interpretando las disposiciones que regulan la concesión de variaciones del Reglamento de Planificación Núm. 4, las cuales tienen un lenguaje similar a las del Reglamento de Zonificación Especial de Santurce, que las variaciones, como mecanismo de excepción, sólo deben concederse en situaciones realmente extraordinarias, **cuando están claramente justificadas** y procedan conforme los requisitos estipulados por las leyes y reglamentos de planificación aplicables. *Mun. de San Juan v. Bosque Real, S.E.,* 158 D.P.R. 743 (2003); *T-JAC, Inc. v. Caguas Centrum Limited Partnership, S.E.,* supra; *Asoc. Res. Park Side, Inc. v. J.P.,* supra, 357; *Fuertes y Otros v. A.R.P.E.,* 134 D.P.R. 947, 958 (1993). La utilización inapropiada e indiscriminada de

este mecanismo "podría destruir todo nuestro esquema de zonificación y cambiar eventualmente las características de un distrito, planificado originalmente con una infraestructura para ciertos usos." A.R.P.E. v. J.A.C.L., supra, 862. Conforme lo anterior, hemos resuelto reiteradamente que **"una decisión administrativa concediendo o denegando excepciones o variaciones acorde a los Reglamentos de Zonificación debe estar debidamente fundamentada,"** demostrándose así que la agencia analizó los criterios desarrollados jurisprudencialmente y los establecidos por reglamentación que deben considerarse al autorizar o denegar el uso solicitado. *Vélez Rodríguez v. A.R.P.E.*, 167 D.P.R. ___ (2006), 2006 T.S.P.R. 69; *López v. Junta Planificación*, 80 D.P.R. 646, 664 (1958). (Énfasis suplido)

### C

El Reglamento de Zonificación Especial de Santurce define uso accesorio como "[c]ualquier uso estrechamente relacionado o complementario al uso principal que se da a la pertenencia o propiedad." 23 R.P.R. sec. 650.1881(B)(219). A su vez, la sección 20.1 del Reglamento prescribe la forma en que A.R.P.E. puede autorizar permisos de usos accesorios. Específicamente, la referida disposición estable que

> [p]odrán proveerse usos accesorios a **cualquier uso principal permitido en el distrito** donde ubique una pertenencia de acuerdo a lo establecido en esta Sección y sujeto a lo siguiente:

(1) Todo uso accesorio a permitirse será claramente incidental y corrientemente relacionado con el uso principal al que habrá de servir.

(2) Todo uso accesorio deberá contribuir a la comodidad, conveniencia o necesidad de los usuarios del uso principal servido.

(3) **Todo uso accesorio deberá ser establecido conjuntamente o con posterioridad al establecimiento del fin principal al que habrá de servir**, pero nunca antes.

(4) **La descontinuación del uso principal implicará la descontinuación de los usos accesorios,** excepto cuando se trate de las unidades de vivienda que se permiten en los edificios accesorios en las zonas de uso residencial o de uso general.

(5) El área de ocupación del edificio accesorio y del edificio principal no excederá la permitida para el solar.

23 R.P.R. sec. 650.1899 (A)(1)-(5)(énfasis suplido)

Es importante señalar que "[l]os espacios para usos accesorios [relacionados a un uso comercial principal] podrán proveerse como parte de un edificio principal o en edificios accesorios y éstos podrán situarse, excepto cuando se indique lo contrario en este Reglamento, en cualquier sección del solar donde se permite localizar el edificio principal; o en patios laterales o posteriores requeridos. . . ." 23 R.P.R. sec. 650.1899(C)(6).

**IV**

Habiendo expuesto y discutido la normativa aplicable al caso de autos, pasamos a resolver la controversia ante nuestra consideración.

Como se indicó inicialmente, el Sr. Cardona es dueño de una funeraria localizada en Santurce desde 1974. Hasta

1993, el solar donde ubica la propiedad estaba clasificado como de Uso Comercial Uno (C-1). Posteriormente, al enmendarse el Reglamento de Zonificación Especial de Santurce, dicho distrito fue reclasificado como una Zona de Uso General Dos (ZU-G2). De acuerdo a la nueva reglamentación, la operación de negocios de servicios fúnebres, como el del Sr. Cardona, no está permitido en este distrito. 23 R.P.R. sec. 650.1885.

La funeraria operaba con un permiso de uso válido, expedido por A.R.P.E. en 1992. Por virtud de la entrada en vigor de una nueva reglamentación del Departamento de Salud, el Sr. Cardona reubicó la sala de embalsamar que operaba dentro de la funeraria, en el sótano de la propiedad donde opera su negocio. Esta situación provocó que su vecina, la Sra. Jiménez presentara una querella ante A.R.P.E. alegando que los olores y ruidos que se producían en el laboratorio de embalsamar le ocasionaban problemas de salud.

En atención a lo anterior, El Sr. Cardona solicitó permiso de uso para su funeraria y la reubicada sala de embalsamar ante A.R.P.E. La agencia, determinó autorizar el uso solicitado mediante el mecanismo de variación establecido en el Capítulo 35 del Reglamento de Zonificación Especial de Santurce vigente al momento de la solicitud. Entendió además la referida entidad, que la sala de embalsamar podía considerarse como un uso accesorio a la funeraria que operaba con el correspondiente permiso

desde 1992. En esencia, de la Resolución de A.R.P.E. autorizando el permiso solicitado se colige que la agencia concedió una variación a las disposiciones del reglamento de zonificación aplicable y a su vez autorizó la operación de la sala de embalsamar como un uso accesorio al de funeraria.

La determinación realizada por A.R.P.E, concediendo la autorización al uso de funeraria y de la sala de embalsamar solicitado, no consignó determinaciones de hechos y conclusiones de derecho suficientes que justifiquen la variación concedida. En esencia, A.R.P.E. se limitó a describir escuetamente la propiedad en cuestión y transcribir las disposiciones del Capítulo 35 del Reglamento de zonificación aplicable, sin justificar este proceder. La J.A.C.L., en ocasión de revisar la determinación realizada por A.R.P.E., ratificó la autorización concedida emitiendo una resolución con determinaciones de hechos y conclusiones de derecho similarmente defectuosas que la de A.R.P.E.

Sin lugar a dudas, el Sr. Cardona necesitaba autorización de A.R.P.E. para continuar operando su funeraria y la reubicada sala de embalsamar luego de modificarse la zonificación del distrito donde está localizada su propiedad. De hecho, según se desprende del expediente, en varias ocasiones A.R.P.E. notificó al Sr. Cardona que operaba su negocio en contravención de la nueva zonificación establecida por el Reglamento Especial de

Santurce desde 1993. El Reglamento de Zonificación Especial de Santurce establece en su sección 3.2 que a partir de la fecha de su vigencia "se requerirá la expedición por [A.R.P.E.] de un permiso de uso para ocupar o usar cualquier propiedad, estructura o terrenos. . . ." 23 R.P.R. sec. 650.1649(2). La referida reglamentación establece además que la agencia sólo podrá expedir permisos de uso cuando la propiedad o el uso que se le quiera dar esté en armonía y conformidad con las disposiciones del Reglamento. 23 R.P.R. sec. 650.1649(4).

Al igual que concluyó el Tribunal de Apelaciones, entendemos que las Resoluciones emitidas tanto por A.R.P.E. como por J.A.C.L. carecen de determinaciones de hechos y conclusiones de derecho que justifiquen la concesión del permiso solicitado, considerando que el mismo procedía una vez se autorizara adecuadamente una variación a las disposiciones. Lo anterior es contrario a la normativa desarrollada por este Tribunal que establece que la concesión o denegación de variaciones tiene que estar debidamente justificada en la Resolución que emita la agencia correspondiente. *Vélez Rodríguez v. A.R.P.E.*, supra; *López v. Junta Planificación*, supra. Específicamente, hemos señalado que las determinaciones sobre variaciones de los requisitos establecidos por reglamentos de zonificación tienen que evidenciar que se analizaron y aplicaron los criterios establecidos jurisprudencialmente y por los reglamentos aplicables para

conceder las mismas. *Id*. Lo anterior permitirá demostrar que existen circunstancias extraordinarias y meritorias que justifiquen la variación concedida. *Fuertes v. A.R.P.E.*, supra.

Dado que la operación de la funeraria y, por consiguiente, la sala de embalsamar, no eran usos permitidos ministerialmente en el distrito donde ubica la propiedad, tanto A.R.P.E. como J.A.C.L. tenían que analizar y aplicar los criterios establecidos por el Reglamento de Zonificación Especial de Santurce para la concesión de variaciones. 23 R.P.R. sec. 650.1915(a)-(H). Conforme lo anterior, los organismos tenían que demostrar en sus resoluciones que consideraron, entre otros factores, si la concesión del permiso era compatible con los propósitos de la clasificación establecida por el Reglamento y si la operación de la funeraria y su sala de embalsamar afectaban el contexto urbano donde ubica al igual que la seguridad y tranquilidad de los vecinos de la comunidad. No obstante lo anterior, los organismos meramente se limitaron a describir la situación particular de la propiedad y las acciones correctivas que realizó el Sr. Cardona para atender los reclamos de su vecina y, más aún, a transcribir las disposiciones sobre variaciones del Reglamento de Zonificación sin aplicarlo a la situación ante su consideración.

Indudablemente el lenguaje de las resoluciones de A.R.P.E. y J.A.C.L. no evidencia que estos organismos

procedieron conforme Derecho. Tampoco encontramos en el expediente del caso de autos evidencia que nos ponga en posición de concluir que en la autorización del permiso se cumplieron con los requisitos establecidos para la concesión de una variación. Sin lugar a dudas, las resoluciones de los organismos administrativos, mucho menos su lenguaje, no son un modelo adecuado de lo que debe ser una determinación debidamente fundamentada y conforme el ordenamiento que rige la presente controversia.

La peticionaria, al igual que la Junta de Planificación en su comparecencia, nos invita a concluir que la expedición del permiso que realizó A.R.P.E. fue conforme a Derecho, ya que se trataba de una autorización de un uso accesorio al de la funeraria. Fundamentan su alegación, en el hecho de que la funeraria operaba desde 1992, antes de rezonificarse la propiedad, con un permiso válidamente expedido por A.R.P.E. La Junta de Planificación argumenta además, que determinar lo contrario, al igual que lo hizo el Tribunal de Apelaciones, sería poner en riesgo la utilización del uso accesorio como mecanismo flexible ya que le estaría impartiéndole requisitos estrictos como si se tratara de una solicitud de variación de uso. Entendemos que no le asiste la razón a las referidas agencias administrativas. Más aún, sus alegaciones no deben servir como justificación para sancionar el proceder inadecuado de A.R.P.E. y J.A.C.L.

El lenguaje de la disposición del Reglamento que permite la concesión de permisos de usos accesorios es claro al disponer que se considerarán como tales aquellos que sean incidentales a un uso principal permitido en el distrito por el Reglamento de Zonificación Especial de Santurce. 23 R.P.R. sec. 650.1899(A)(1)-(5). Ante la inexistencia de un uso principal permitido, o sea el de servicios fúnebres, no se podía conceder un permiso de uso accesorio determinando que ya la funeraria tenía un permiso de uso válido desde 1992.

A la luz de la reglamentación aplicable a la controversia de autos, procedía considerar primero si procedía concederse una variación ya que el Reglamento, como se le informó en varias ocasiones al Sr. Cardona, no permite la operación de una funeraria en una propiedad clasificada como ZU-G2. En otras palabras, no se podía hablar de usos accesorios sin que antes existiera un uso principal permitido en el distrito por el Reglamento de zonificación. O sea, el permiso de uso concedido por A.R.P.E. en 1992, era ya inconsecuente toda vez que en 1993 se aprobó un reglamento de zonificación que impedía la operación de este tipo de negocios en el distrito donde está ubicado. Ante lo anterior, A.R.P.E. tenía que determinar adecuadamente, analizando y aplicando los criterios correspondientes, si procedía autorizar la operación de la funeraria en el distrito donde sita, mediante el mecanismo de variación, y posteriormente si

procedía la concesión de un permiso de uso accesorio para operar la sala de embalsamar en el sótano de su propiedad.[15]

Habida cuenta de que tanto A.R.P.E. como J.A.C.L. autorizaron la operación de una funeraria y su sala de embalsamar, mediante el mecanismo de variación, sin justificar tal proceder en sus respetivas resoluciones, es evidente que ambos organismos actuaron incorrectamente al expedir el permiso solicitado por el Sr. Cardona. Por lo anterior, procede confirmar la determinación del Tribunal de Apelaciones, por tal motivo a A.R.P.E. para que revise su determinación y proceda conforme corresponde a autorizar o denegar la expedición del permiso solicitado por el Sr. Cardona.


Anabelle Rodríguez Rodríguez
Juez Asociada

---

[15] Debe quedar claro que con nuestras expresiones no estamos adjudicando si la operación de la sala de embalsamar representa o no un uso accesorio al de la funeraria. Esta determinación le corresponde, en su momento y conforme lo establecido por los reglamentos aplicables, a las agencias administrativas con facultad para así resolver.